FILED
U.S. DISTRICT COURT RECE□□□ □ □□□

**DAVID J. HOLDSWORTH (4052)**
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT 84070
Telephone (801) 352-7701
Facsimile (801) 567-9960

2017 MAR 13  ⊃ 12: 30     MAR 0 2 2017

DISTRICT OF UTAH    **U.S. DISTRICT COURT**

BY:_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| LORI MORRISON, | : **COMPLAINT** |
| | : **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : |
| | : |
| v. | : Case: 2:17−cv−00150 |
| | : Assigned To : Waddoups, Clark |
| LIBERTY MUTUAL INSURANCE, | : Assign. Date : 3/3/2017 |
| LIBERTY LIFE ASSURANCE | : Description: Morrison v. Liberty |
| COMPANY OF BOSTON, | : ( Mutual Insurance, et al |
| | : |
| Defendant. | : Honorable |

COMES NOW, the Plaintiff Lori Morrison (hereinafter "Ms. Morrison"),

complains of Defendant Liberty Mutual, demands a trial by a jury as to all issues triable

by a jury, and, as and for causes of action, alleges as follows:

### I. JURISDICTION

1.      Ms. Morrison brings this action pursuant to the Employee

Retirement Income Security Act of 1974, ("ERISA"), as amended, 29 U.S.C. § 1001, et

seq. Jurisdiction is based on federal question, 28 U.S.C. §§ 1331, 1332—namely, the

interpretation and application of various provisions of the ERISA and, specifically, §

502 (e) (1), 29 U.S.C. § 1132 (e) (1).  Ms. Morrison also brings state law claims under

the federal district courts' supplemental jurisdiction, 28 U.S.C. § 1367.

## II. PARTIES

2.      Plaintiff Lori Morrison is a citizen of the United States, who, at all

times relevant hereto, was a resident of the State of Utah, and an employee of Wal-Mart

Stores (hereinafter "Wal-Mart").

3.      At all times relevant hereto, Plaintiff was employed by Wal-Mart.

4.      On information and belief, Defendant Liberty Mutual Insurance

Company, by and through Liberty Life Assurance Company of Boston (hereinafter

"Liberty Mutual"), is an insurance company which does business in the State of Utah.

5.      On information and belief, Plaintiff alleges Liberty Mutual

provides group short-term and long-term disability insurance coverage and benefits to

qualifying employees of Wal-Mart pursuant to employee group health and welfare plans

provided by Wal-Mart to Wal-Mart employees by virtue of their employment with Wal-

Mart.

6.      On information and belief, Plaintiff alleges that Liberty Mutual is

the "plan administrator" for Wal-Mart's group short-term and long-term disability

insurance plans and administers the above-described short-term and long-term disability

insurance benefits/plans for qualifying employees of Wal-Mart.

2

## III. VENUE

7.     Venue in this Court is proper in that the causes of action alleged herein arose in the District of Utah, ERISA § 502 (e) (2), 29 U.S.C. § 1132 (e) (2).

## IV. STATEMENT OF FACTS

### A. MS. MORRISON'S EMPLOYMENT WITH WAL-MART

8.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 7 above as if alleged in full herein.

9.     In approximately 1991, Ms. Morrison began employment with Wal-Mart.

10.    At the time of the events alleged herein, Ms. Morrison worked as an accounting office associate for Wal-Mart.

11.    Ms. Morrison's job/occupation was a full time position.

12.    At all times relevant hereto, during the time of Ms. Morrison's employment with Wal-Mart, Wal-Mart provided short-term and long-term disability insurance benefits to its employees pursuant to group disability insurance plans administered by Liberty Mutual.  Ms. Morrison paid for such benefits, including, but not limited to, to short-term disability insurance benefits and long-term disability insurance benefits.

3

13.    In terms of physical requirements, Ms. Morrison's job required the ability to engage in sedentary to light physical exertion on a full-time, hour-after-hour, day-after-day, week-after-week basis.

14.    In terms of mental/cognitive requirements, Ms. Morrison's position required knowledge, concentration, attention to detail, accuracy, communication skills, skills in working with customers, skills in working with coworkers and managers and in solving various problems which would frequently crop up.

15.    Ms. Morrison's position also required regular attendance, punctuality, and a high level of competence, skill, performance and productivity.

16.    In the years and months leading up to February 2013, Ms. Morrison developed a number of physical and mental serious health conditions and impairments.  These include:

(a)    degenerative disc disease in her back;

(b)    osteoarthritis in her neck and lower back;

(c)    arthritis in her hands;

(d)    arthritis in her knees;

(e)    irritable bowel syndrome;

(f)    constipation;

4

(g)    antalgic gait;

(h)    left upper quadrant pain;

(i)    low anterior thoracic pain;

(j)    migraine headaches;

(k)    anxiety;

(l)    memory loss;

(m)    disrupted sleep patterns;

(n)    stress and fatigue aggravated all of the above-listed

conditions and impairments.

17.    These conditions/impairments caused significant functional limitations in Ms. Morrison's ability to perform the material and substantial duties of her job.  These limitations included:

(a)    numbness in her lower extremities;

(b)    limited ability to stand;

(c)    limited ability to sit;

(d)    limited ability in walking;

(e)    difficulty in maintaining attention and concentration;

(f)    difficulties in reading;

(g)    difficulty in writing;

5

(h)     difficulty in staying on task;

(i)     difficulty with vision, including eye-hand coordination;

(j)     needing time to rest and recover, which could be anywhere from a few hours to several days;

(k)     daily activities causing more fatigue, which require extra time to finish minimal tasks;

(l)     lack of energy and stamina.

18.     At all times relevant hereto, during the time Ms. Morrison's employment with Wal-Mart, Wal-Mart provided group short-term and long-term disability insurance benefits to its employees pursuant to a group disability insurance plans administered by Liberty Mutual.

## B. APPLICATION, APPROVALS, DENIALS AND APPEALS

19.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 18 above as if alleged in full herein.

20.     The above-listed serious health conditions and impairments gradually eroded Ms. Morrison's ability to perform the material and substantial duties of her job.

21.     As they did so, on or about February 12, 2013, Ms. Morrison decided to apply for short-term disability insurance benefits with Wal-Mart's group

short-term disability insurance carrier. February 12, 2013 was the last day Ms.
Morrison worked at all for Wal-Mart.

22.    Thus, on or about February 25, 2013, Ms. Morrison filed a claim
for short-term disability insurance benefits under Wal-Mart's group short-term
disability insurance policy with Liberty Life Assurance Company of Boston.

23.    Liberty Mutual duly approved Ms. Morrison's claim and paid Ms.
Morrison short-term disability insurance benefits for 26 weeks from February 26, 2013
to approximately August 26, 2013.

24.    By letter dated July 12, 2013, Liberty Mutual notified Ms.
Morrison that her short-term disability insurance benefits would likely end on August
26, 2013.

25.    Thereafter, Ms. Morrison applied for group long-term disability
insurance benefits with Wal-Mart's group long-term disability insurance carrier.

26.    On August 21, 2013, Ms. Morrison underwent an MRI of her
lumbar spine. Said MRI confirmed various conditions and impairments in Ms.
Morrison's lumbar spine.

27.    By memo dated August 29, 2013, Dr. Ronald S. Green opined that
"the record and peer conversation with treating providers supports impairment".

7

28.     By letter dated September 3, 2013, Liberty Mutual informed Ms. Morrison that it had determined that she satisfied the requirements for eligibility for long-term disability insurance benefits as of February 12, 2013, making Ms. Morrison eligible to receive benefits as of August 27, 2013.

29.     On September 17, 2013, Ms. Morrison underwent an MRI of her thoracic spine. Said MRI confirmed various conditions in Ms. Morrison's thoracic spine. Dr. Brent Bowen diagnosed Ms. Morrison's as suffering from chronic low back pain.

30.     By letter dated October 3, 2013, Liberty Mutual notified Ms. Morrison that it was reviewing Ms. Morrison's continued eligibility for long-term disability insurance benefits. In said letter, Liberty Mutual made several requests for updated medical information. Said letter allowed Ms. Morrison 30 days [to approximately November 2, 2013] to obtain and submit all such information and requested Ms. Morrison to provide such information by November 2, 2013.

31.     On October 22, 2013, Claudia M. Restrepo-Gartner, M.D., performed a review of "the file". Dr. Restrepo-Gartner opined "the back problem alone, however, is not of a nature or severity to preclude all work capacity at this time". That was not the definition of disability applicable at the time. Ms. Morrison suffered from several impairments in addition to back impairments and chronic pain.

8

32.    By letter dated October 22, 2013, <u>eleven days before November 2, 2013,</u> Liberty Mutual notified Ms. Morrison that it had determined that she had not met the definition of ongoing disability after October 26, 2013.

33.    To some extent, the identification, diagnosis and understanding of the above-listed serious health conditions and impairments and how they were causing Ms. Morrison limitations in functioning did not become completely clear until after October 26, 2013.

34.    On October 24, 2013, Ms. Morrison underwent a surgical consultation with Junius Clawson, M.D.  Such results were faxed to UNUM on October 28, 2013.

35.    On October 28, 2013, Ms. Morrison underwent an evaluation with Brent Bowen, M.D., and Stephen M. Clements, PA-C, who discussed her low back pain, left sided buttock and hip pain and lower extremity symptoms.  A report of such symptoms was faxed to Liberty Mutual on October 28, 2013.

36.    By letter dated October 31, 2013, Ms. Morrison appealed Liberty Mutual's denial dated October 22, 2013.

37.    By letter dated November 11, 2013, Liberty Mutual acknowledged receipt of Ms. Morrison's appeal.

38.     On December 11, 2013, Ms. Morrison underwent an exploratory laparoscopy.  Such laparoscopy found and excised several lesions of the small bowel to the anterior abdominal wall.

39.     By letter dated December 20, 2013, Liberty Mutual informed Ms. Morrison that it needed additional time to render a decision on her appeal.

40.     On December 20, 2013, Liberty Mutual requested Dr. Roderick McKinley to provide information regarding his treatment of Ms. Morrison.

41.     By letter dated January 15, 2014, Liberty Mutual informed Ms. Morrison that it had determined that she no longer met the definition of disability for purposes of receiving benefits under the group long-term disability policy.  Such letter gave Ms. Morrison the right to file a second appeal.

42.     By letter dated January 22, 2014, Ms. Morrison exercised her right to file a second appeal and informed Liberty Mutual that she had appointments with Dr. Lym, Mr. Clements, P.A.-C, and Dr. Clawson later in January 2014.

43.     By letter dated January 28, 2014, Liberty Mutual acknowledged receiving Ms. Morrison's request for an appeal.  Said letter requested Ms. Morrison to provide any information she wished to provide by March 28, 2014.

44.     Thereafter, Ms. Morrison submitted several types of information, including the following:

(a)     January 24, 2014 office visit note from Stephen M. Clements, PA-C;

(b)     February 5, 2014 electro diagnostic EMG performed by Dr. Richard W. Hurst;

(c)     February 5, 2014 office visit note from Richard W. Hurst, M.D.;

(d)     February 6, 2014 office note from Dr. Hurst.

45.     By letter dated and faxed February 6, 2014. Ms. Morrison faxed an accommodation request for medical leave of absence to Wal-Mart.

46.     On or about February 18, 2014, Ms. Morrison underwent a residual functional capacity evaluation with Dr. Dell Felix providing additional information about her conditions and limitations.

47.     By form dated February 19, 2014, Stephen M. Clements, P.A.-C, filled out a Liberty Mutual restrictions form.

48.     By form dated February 24, 2014, Dr. Robert Lym filled out a Liberty Mutual restrictions form (on that same date Ms. Morrison faxed an accommodation request for medical leave of absence to Wal-Mart).

49.    On or about _____, 2014, Ms. Morrison sent another letter to Liberty Mutual providing additional information about her conditions and limitations.

50.    On March 7, 2014, Ms. Morrison underwent an MRI of her lumbosacral spine.  Said MRI revealed several conditions and impairments in Ms. Morrison's lumbar spine.

51.    By letter dated April 15, 2014, Liberty Mutual issued a letter to Ms. Morrison in which it denied her claim for ongoing long-term disability insurance benefits after October 26, 2013.

52.    By phone call on May 7, 2014, Ms. Morrison filed an appeal of April 15, 2014 denial.

53.    On or about May 15, 2014, Ms. Morrison faxed 22 pages of medical and other information to Liberty Mutual.

54.    On or about May 22, 2014, Liberty Mutual issued a letter to Ms. Morrison again denying her claim for ongoing long-term disability insurance benefits after October 26, 2013.  Liberty Mutual stated that it had determined that Ms. Morrison's circumstances did not satisfy the definition of disability in the policy.

55.    By letter dated _____, Ms. Morrison appealed the April 15, 2014/May 22, 2014 denial.

12

56.     By letter dated July 11, 2014, Liberty Mutual acknowledged it would agree to conduct a second appeal review of Ms. Morrison's long-term disability claim.

57.     On July 15, 2014, Ms. Morrison underwent a left total hip replacement for left hip degenerative joint disease.

58.     On or about July 31, 2014, Liberty Mutual issued a letter to Ms. Morrison in which it stated it had completed its second review of her Request for Reconsideration of the denial of her claim for long-term disability insurance benefits and that it was affirming its prior denials.

59.     Said July 31, 2014 denial informed Ms. Morrison that she had the right to bring a civil action under § 502 (a) of ERISA following an adverse benefit determination on review.

### C.  MS. MORRISON'S SERIOUS HEALTH CONDITIONS AND IMPAIRMENTS AND HER ELIGIBILITY FOR LONG-TERM DISABILITY BENEFITS

60.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 59 above as if alleged in full herein.

61.     At all times relevant herein, Ms. Morrison was employed by Wal-Mart and covered under the above-referenced plans/policies.

62.     In approximately early 2013, Ms. Morrison began experiencing several serious health conditions and impairments.

63.     Such serious health conditions and impairments fall into the category of sickness or sicknesses within the meaning of the policy.

64.     Such serious health conditions and impairments substantially limited Ms. Morrison's ability to sit, stand, walk, lift, carry, concentrate, communicate, solve problems, multitask, and follow through.

65.     After February 2013, Ms. Morrison's health worsened.  Her  health conditions and impairments caused her to miss days and parts of days of work and to be unable to work productively or full time from February 2013 forward.

66.     As her physical conditions summarized above worsened and, in combination, such caused Ms. Morrison to be unable to perform the material and substantial duties of her own occupation.

67.     Thereafter, Ms. Morrison has not been able to work or maintain steady, full-time productive employment.

68.     For such conditions, Ms. Morrison treated with various health care providers.

69.     Ms. Morrison's providers prescribed various treatments and medications for Ms. Morrison.

14

70.     The medications Ms. Morrison took for her serious health conditions/impairments also caused Ms. Morrison to experience several and various adverse side effects such as drowsiness, dizziness, light headedness, stomach nausea, body aches, trouble sleeping, blurred vision, and dry mouth.

71.     Thus, Ms. Morrison's desire to comply with her treating physicians' recommendations for treatment also created functional limitations incompatible with her being able to perform the material and substantial duties of her own occupation and to work in her own occupation on a full-time, regular, sustained, continuous, productive basis.

72.     Such sicknesses caused Ms. Morrison to be unable to work a full eight-hour workday and when she was able to show up to work, to work productively. Thus, on and after October 26, 2013, due to sickness, Ms. Morrison became unable to perform all of the material and essential duties of her own occupation on a full-time, regular, sustained, continuous and productive basis.

73.     As of October 26, 2013, Ms. Morrison was still "Disabled," as that term is defined in the plan and, thus, Ms. Morrison alleges Liberty Mutual should have approved her claim for ongoing long-term disability benefits and paid her long-term disability insurance benefits after October 26, 2013.

74.     By decision dated April 1, 2016, the Social Security
Administration determined that Ms. Morrison was disabled under Social Security laws
and had been since February 12, 2013.

### D. EXHAUSTION OF ADMINISTRATIVE REMEDIES

75.     Plaintiff incorporates by this reference all allegations listed in
paragraphs 1 through 74 above as if alleged in full herein.

76.     On April 15, 2014 and, then again on May 22, 2014, and then
again on July 31, 2014, Liberty Mutual issued a final administrative decision informing
Ms. Morrison that it was finally disapproving her claims for long-term disability
insurance benefits after October 26, 2013.

77.     On July 31, 2014, Liberty Mutual informed Ms. Morrison that she
has exhausted her administrative remedies under the Summary Plan Description.
Liberty Mutual informed her that she had a right to bring a civil action under Section
502(a) of the Employee Retirement Income Security Act of 1974. By filing the instant
Complaint, Ms. Morrison is doing just that.

78.     In February 2013, Ms. Morrison developed serious health
conditions and impairments in that such were causing her to miss days and parts of day,
to have serious difficulties with attendance, concentration, performance and

16

productivity, and to be unable to work productively or full time from February 2013

forward.

79.    Ms. Morrison alleges that Liberty Mutual's decision to deny her

claim for ongoing long-term disability insurance benefits after October 26, 2013 is

arbitrary, capricious, unreasonable and an abuse of discretion in that, among other

things, Liberty Mutual did not correctly evaluate her medical records and the reports of

various health care providers.

80.    Ms. Morrison alleges such decision to deny her claim and not pay

her long-term disability insurance benefits constitutes a violation of her rights under

ERISA.

## E.  GROUNDS FOR JUDICIAL REVIEW

81.    Plaintiff incorporates by this reference all allegations listed in

paragraphs 1 through 80 above as if alleged in full herein.

82.    Ms. Morrison acknowledges that, in this kind of a case, a claimant

has the burden of providing medical documentation which supports (1) that the

claimant has a medical condition or conditions, (2) that the medical condition(s) creates

or results in limitations in functioning; and that (3) due to such medical condition or

conditions and limitations in functioning, the claimant is unable to perform the material

and substantial duties of her own occupation on a full time, productive basis.  Ms.

17

Morrison alleges that she has satisfied each of these elements. Accordingly, Ms. Morrison alleges that Liberty Mutual's decision to deny her claim for ongoing long-term disability insurance benefits after October 26, 2013 is arbitrary, capricious, unreasonable and an abuse of discretion.

83.     Ms. Morrison has provided medical evidence, both subjective and objective, that she suffers from one or more serious health conditions and impairments.

84.     Ms. Morrison has provided medical and other evidence which establishes that such medical conditions cause or result in serious functional limitations.

85.     Ms. Morrison has provided evidence that such conditions/impairments and functional limitations cause her to be unable to perform the material and substantial duties of her own job on a full time, productive basis.

86.     The totality of Ms. Morrison's medical documentation (including test results, doctor's notes, FMLA paperwork, progress reports, and Liberty Mutual forms) taken collectively, clearly establishes that Ms. Morrison's treating physicians have determined that Ms. Morrison suffers from medical conditions sufficient to cause substantial limitations in her ability to walk, sit, stand, lift, carry, push, pull, and to concentrate, focus, remember, to multi-task and follow through, such that her medical conditions preclude her from being able to perform the material and substantial duties

18

of her occupation/job on a full time, regular, sustained and continuous basis and in a productive and successful manner.

87.    Ms. Morrison's treating physicians endorse and support Ms. Morrison's claims for disability benefits.

88.    Liberty Mutual has based its decision on a medical doctor's review of the file who had not ordered any relevant tests and who had not performed any in-person examination of Ms. Morrison.

89.    Liberty Mutual has not supported its denial by referring to any medical doctor who has actually examined or tested Ms. Morrison, who has come to a different conclusion.

90.    Liberty Mutual has not supported its denial by referring to any functional capacity evaluator who has actually examined or evaluated Ms. Morrison to determine Ms. Morrison's functional capacity, who has come to a different conclusion.

91.    Liberty Mutual has not supported its denial by referring to any vocational rehabilitation or placement counselor who has actually examined and reviewed Ms. Morrison's situation (work experience, education, training, current job, medical history, and functional capacity), who has come to a different conclusion.

19

92.     Liberty Mutual has selectively applied provisions of the Plan to the facts of this case to deny Ms. Morrison coverage for long-term disability insurance benefits.

93.     Accordingly, Ms. Morrison contends that Liberty Mutual's initial and continuing denials of her claim for long-term disability insurance benefits is contrary to the facts, contrary to her treating physicians' opinions and contrary to the weight of the totality of the evidence, and is, therefore, arbitrary, capricious, unreasonable and an abuse of discretion.

## F. DAMAGES

94.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 93 above as if alleged in full herein.

95.     Such denial of ongoing eligibility for long-term disability benefits has caused Ms. Morrison the loss of disability benefits to which she is eligible.

96.     Such denial has also substantially aggravated Ms. Morrison's multiple physical and psychological impairments, which has had an adverse impact upon her health.

97.     Such denial has caused other consequential damages.

98.     Such denial has also necessitated that Ms. Morrison hire an attorney and incur attorneys fees and court costs.

20

## IV.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FOR A DECLARATION THAT LIBERTY MUTUAL'S
### DECISIONS AND DENIAL WERE ARBITRARY AND CAPRICIOUS

99.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 98 above as if alleged in full herein.

100.    Ms. Morrison alleges that, under the circumstances of the instant case, Liberty Mutual's decisions to deny Ms. Morrison eligibility for ongoing long-term disability insurance benefits after October 26, 2013 were arbitrary, capricious, unreasonable and an abuse of discretion.

101.    During its processing of Ms. Morrison's request for review/appeal, Liberty Mutual did <u>not</u> examine Ms. Morrison.  Then, based on its analysis, which did <u>not</u> include such an actual examination or hands on inquiry as to such conditions and what those conditions would cause in terms of functional limitations, Liberty Mutual determined that Ms. Morrison did not qualify for ongoing long-term disability insurance benefits after October 26, 2013.

102.    Ms. Morrison alleges the issue is not whether <u>her medical records</u> contain sufficient information about her impairments and about restrictions and limitations incompatible with her being able to work.  Ms. Morrison alleges the issue is whether she has impairments which could and do create or generate restrictions and

limitations which render her unable to perform all of the material and substantial duties

of her own occupation on a full-time, sustained, regular, continuous, productive basis.

And, in particular, whether Ms. Morrison suffered from such restrictions and

limitations which rendered her unable to work after October 26, 2013.

103.   To determine the issue of whether a claimant's circumstances meet

the definition of being disabled, a long-term disability carrier can certainly obtain and

review a claimant's medical records, and to see if the treating physician(s) have

addressed whether the claimant's medical conditions would be expected to cause any

restrictions or limitations, and, if so, whether such restrictions and limitations would

render the claimant incapable of performing all of the material and substantial duties of

her own job on a full-time, regular, sustained, continuous, productive basis.  And, <u>if</u> the

medical records address those matters, and if a treating physician has a solid

understanding of the claimant's job and the physical and cognitive requirements of the

claimant's job, and then provides an evaluation of the claimant's medical conditions

and whether such conditions cause restrictions and limitations, and then opines on

claimant's ability, or lack of ability, given those restrictions and limitations, to perform

the physical and cognitive requirements of the claimant's job, and <u>all of the above finds</u>

<u>its way into the medical records,</u> the carrier can have confidence that a treating

physician's medical records and reports capture the reality of the claimant's ability to

work and basing a decision as to eligibility on just a review of the medical records is a

reasonable course of action. But where, as in the instant case, a disability insurance

carrier relies solely on information which does not directly address or measure, in

objective medical terms, all of the claimant's restrictions and/or limitations, and how

they might impact the claimant's ability to perform the physical and cognitive

requirements of her occupation, and does not examine the claimant, all of which

claimant, on information and belief, alleges the carrier did not do with respect to the

claim at issue herein, then the claimant can fairly allege that a denial made on such an

incomplete basis is arbitrary, capricious, unreasonable, and an abuse of discretion. Ms.

Morrison so alleges.

104.    Ms. Morrison seeks the Court to grant declaratory relief to that

effect.

## SECOND CAUSE OF ACTION
## UNDER ERISA FOR RECOVERY OF BENEFITS

105.    Plaintiff incorporates by this reference all allegations listed in

paragraphs 1 through 104 above as if alleged in full herein.

106.    The Wal-Mart Disability Plans are subject to the ERISA.

107.    Ms. Morrison is a participant or beneficiary in such Plans.

108.   From October 26, 2013 and thereafter, to the present and ongoing, Ms. Morrison has been disabled, as defined in the Plans, and is eligible for long-term disability benefits under the Plans.

109.   Ms. Morrison has satisfied all the conditions required of her by the above-named Plans to qualify for long-term disability insurance benefits.

110.   Due to the serious health conditions/impairments described above, from October 26, 2013 to the present and ongoing, Ms. Morrison has been totally disabled from performing all of the material and substantial duties of her own occupation (or any other occupation) and, therefore, she qualifies for such long-term disability insurance benefits.

111.   Liberty Mutual has failed and neglected, and is still failing and neglecting, to pay the long-term disability benefits due to Ms. Morrison under the Plans.

112.   For the reasons set forth above, Ms. Morrison alleges that Liberty Mutual's reasons for doing so are arbitrary, capricious, unreasonable, and an abuse of discretion.

113.   By denying Ms. Morrison eligibility for ongoing long-term disability insurance benefits after October 26, 2013, Liberty Mutual has deprived Ms.

Morrison of her rights to benefits under the Plan, in violation of ERISA § 502 (a) (1) (B) and 29 U.S.C. § 1132 (a) (1) (B).

114. Such actions and inactions have caused Ms. Morrison harm, injury, loss and damage.

115. Such actions and inactions have also necessitated Ms. Morrison to hire counsel and to incur attorney's fees and costs.

116. Ms. Morrison has exhausted all her administrative remedies under the Plans or alleges that further pursuit of administrative remedies would be futile.

117. ERISA provides means for Ms. Morrison to be able to enforce her claim for long-term disability insurance benefits under the Plans.

118. Defendant Liberty Mutual is liable to pay Ms. Morrison the amount of long-term disability benefits determined to be owed her after October 26, 2013, plus pre- and post-judgment interest to the date on which she is no longer disabled (if ever) and the reasonable attorney's fees and costs she has incurred in bringing this action, all pursuant to 29 U.S.C. § 1132 (g).

WHEREFORE, Plaintiff prays for judgment against Defendant Liberty Mutual and seeks the following relief:

1.   A declaration that Ms. Morrison was disabled under the Plan as of

approximately October 26, 2013 and continued to be disabled from

that date forward to the present and continues to be disabled;

2.   For long-term disability insurance benefits under the Plan after

October 26, 2013 for as long as she continues to be satisfy the

definitions of disability;

3.   For pre- and post-judgment interest;

4.   For attorney's fees and court costs; and

5.   For such further relief as may be just and/or equitable.

DATED this 28 day of February, 2017.

/s/ David J. Holdsworth
David J.  Holdsworth
*Attorney for Plaintiff*

VERIFICATION

Lori Morrison, being first duly sworn, upon her oath, deposes and says

that she is the Plaintiff in the above-entitled action, that she has read the foregoing

COMPLAINT and understands the contents thereof, and the allegations made therein

are true of her own knowledge, except as to those matters alleged on information and

belief which she believes to be true.


            /s/ Lori Morrison
            Lori Morrison

      SUBSCRIBED AND SWORN to before me, a Notary Public, this _____

day of _____, 20___.


         _____
         NOTARY PUBLIC

MY COMMISSION EXPIRES:   RESIDING AT: _____

         _____